**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Pearlie Williams, Case No.

Plaintiff, Hon.

v.

THE KROGER CO.,
a foreign profit corporation, and
MICHAEL NUTTING, an individual,
jointly and severally,

Defendants.

---

LAW OFFICE OF DEAN T. YEOTIS, P.C.
DEAN T. YEOTIS (P41290)
SHARLA R. CHARPENTIER (P84860)
Attorneys for Plaintiff
611 W. Court Street
Flint, MI 48503
(810) 767-6100
deanyeotis@yahoo.com
scharpentier@deanyeotis.net

---

**COMPLAINT AND JURY DEMAND**

Plaintiff, PEARLIE WILLIAMS, through her counsel, the LAW OFFICE OF DEAN T. YEOTIS, P.C., states the following claims against Defendants THE KROGER CO. and MIKE NUTTING:

**PARTIES**

LAW OFFICE
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

1. Plaintiff PEARLIE WILLIAMS ("Plaintiff") is a resident of Farmington Hills, County of Oakland, in the State of Michigan.

2. Defendant THE KROGER CO. ("Defendant" or "Defendant Kroger") is a foreign profit corporation with the main publicly traded parent corporation incorporated in Ohio, that conducts

business in the State of Michigan and has a Registered Agent in Lansing, County of Ingham, in the State of Michigan.

3. Defendant MICHAEL NUTTING ("Defendant Nutting") is a resident of the State of Michigan and was at all relevant times Plaintiff's supervisor and an agent of Defendant authorized to act on behalf of Defendant.

## JURISDICTION AND VENUE

4. The events giving rise to this cause of action occurred at Defendant's grocery store where Plaintiff and Defendant Nutting both worked, located in the City of Livonia, County of Wayne, State of Michigan, in the Eastern District of Michigan.

5. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiff brings claims of interference and retaliation pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601, et seq ("FMLA").

6. This Court has diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

7. Plaintiff asserts violations of federal laws and of state laws arising from the same core operative facts that are so related to the federal claims in this action that they form part of the same case and therefore, this Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367. The consolidation of matters is proper pursuant to Fed. R. Civ. P. 42.

a. Claims of interference and retaliation asserted in this lawsuit against Defendants are brought under the FMLA, 29 U.S.C. § 2601, et seq;

b. Claim of age discrimination asserted in this lawsuit against Defendants is brought under the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101, et seq ("ELCRA");

c. Claim of race discrimination asserted in this lawsuit against Defendants is brought under ELCRA, MCL 37.2101, et seq; and

LAW OFFICE
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

d. Claim of retaliation in violation of Article VII asserted in this lawsuit against Defendants is brought under ELCRA, MCL 37.2701, et seq.

8. Venue is proper in the United States District Court for the Eastern District of Michigan under 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

9. Plaintiff, a black woman, was born on August 14, 1953.

10. Plaintiff began her employment with Defendant on or about October 9, 1989 as a cashier.

11. Plaintiff's long-term employment with Defendant Kroger effectively ended on October 31, 2025, after over thirty-five (35) years of dedication and service, when Defendant Nutting, acting on behalf of Defendant Kroger, suspended Plaintiff "pending advisability of discharge." Defendants denied Plaintiff reinstatement and forced her to retire on December 18, 2025.

12. Plaintiff's job duties included greeting customers, scanning and bagging groceries, and maintaining a clean workspace.

13. Throughout the entire tenure of her employment, Plaintiff performed her job at a satisfactory or above level.

14. Plaintiff had no performance issues, and Defendants did not discuss any performance issues with Plaintiff.

15. On or about February 2, 2022, Plaintiff sought medical advice from her doctor after suffering from chest pain and dizziness.

16. Plaintiff was diagnosed as having Chronic AFib.

17. Plaintiff's condition would occur sporadically and cause shortness of breath and dizziness.

18. At all times during her employment, Plaintiff was capable of performing her job duties.

LAW OFFICE
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

19. During the summer of 2024, Defendant Nutting, a white man, became Plaintiff's supervisor.

20. Defendant Nutting began to ask Plaintiff when she was planning on retiring and continued to regularly ask her about retirement up until the end of her employment.

21. Plaintiff continuously stated she had no plans of retiring.

22. Plaintiff applied for and was granted intermittent FMLA leave on April 29, 2025.

23. Plaintiff's intermittent FMLA leave was set to run from April 21, 2025 to April 1, 2026.

24. Plaintiff's doctor estimated the frequency of her episodes to range from "4-6 episodes per year" and the length of each episode would last approximately "8 hours," or one full working day.

25. Plaintiff's doctor noted that the frequency of episodes and length of each episode varies.

26. Plaintiff used her approved intermittent FMLA leave as follows:

a. 4/24/25 for 8 hours;

b. 5/14/2025 for 2 hours;

c. 6/3/2025 for 2 hours;

d. 7/14/2025 for 8 hours;

e. 8/1/2025 for 2.5 hours;

f. 8/4/2025 for 8 hours;

g. 9/24/2025 for 8 hours;

h. 10/27/2025 for 8 hours; and

i. 10/28/2025 for 8 hours.

27. In July of 2025, Defendant Nutting and other management level employees such as Lisa Mitchell, another white supervisor, escalated the frequency of their questions about Plaintiff's retirement.

LAW OFFICE
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

28. Over the course of the last few months of her employment, Plaintiff was asked when she was going to retire during nearly every shift.

29. Defendant's management level employees were asking Plaintiff about her plans to retire so often that her coworkers began making comments about Plaintiff's age and her plans to retire.

30. Plaintiff was bothered by her supervisors and her coworkers' comments about her age and retirement as well as disparate treatment based on age and race and verbally complained to Defendant's management to no avail.

31. For example, Plaintiff complained to Defendant Nutting that an employee called her an "old hag," and Defendant Nutting did nothing.

32. Plaintiff was eventually instructed by Defendant's management to begin submitting written complaints.

33. On July 24, 2025, Plaintiff submitted the first of many written complaints.

34. Not long after Plaintiff began submitting written complaints, Defendant Nutting retaliated against Plaintiff by accusing her of misconduct.

35. Plaintiff's disparate treatment included having to wait for younger white employees to take their breaks despite scheduled break times.

36. Plaintiff's disparate treatment also included younger white employees, who were less qualified and had less seniority, being assigned by Defendant Nutting to U-Scan duty over Plaintiff.

37. In addition, younger white employees engaged in misconduct and were not disciplined.

38. In the latter stages of her employment, Plaintiff's supervisors consistently communicated in rude and demeaning manners to Plaintiff.

39. For example, on or about October 2, 2025, a supervisor approached Plaintiff as she was communicating with a coworker and stated that Plaintiff was "old."

LAW OFFICE
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

40. Defendants cultivated an environment where supervisors and other employees could make demeaning comments about Plaintiff, including calling her "an old butt" in front of customers, without repercussions.

41. Despite Plaintiff continuously submitting complaints, no prompt remedial action was taken by Defendants.

42. Within days of Plaintiff's use of her intermittent FMLA leave at the end of October 2025, Plaintiff was suddenly accused of violating store policy.

43. On October 31, 2025, Defendant Nutting suspended Plaintiff "pending advisability of discharge" and removed Plaintiff from Defendant Kroger's system.

44. Defendant Nutting refused to identify which store policy was violated or provide details of how Plaintiff violated store policy.

45. Defendants did not make investigative efforts even though Plaintiff disputed the allegation.

46. Plaintiff filed a grievance with her union but had no meaningful opportunity to be reinstated.

47. At the end of the grievance process, Plaintiff was denied reinstatement by Defendants.

48. On December 18, 2025, Plaintiff was left with no choice other than to retire.

49. Plaintiff made it clear to Defendants that she wanted to continue to work.

50. Based on Defendants' wrongful acts, Plaintiff has suffered past and future economic damages as well as past and future emotional distress damages.

## COUNT I:
## FMLA INTERFERENCE/RETALIATION

LAW OFFICE
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

51. Plaintiff realleges and incorporates the above paragraphs.

52. Plaintiff asserts claims of interference and retaliation in violation of the FMLA against both Defendants.

53. At all times relevant, Plaintiff was an "eligible employee" under the FMLA by having worked full-time and accumulating more than the necessary hours in the preceding 12-month period.

54. At all times relevant, Defendant Kroger was an "employer" under the FMLA by having 50 or more full-time employees.

55. At all times relevant, Defendant Nutting was an "employer" under the FMLA by acting in the interest of Defendant Kroger and having authority over Plaintiff, including the authority to discipline her.

56. Given Plaintiff's health condition and resulting symptoms, Plaintiff filed for intermittent FMLA.

57. Plaintiff was qualified for FMLA leave based on her doctor's order as a result of her health issues.

58. Plaintiff timely provided Defendants notice of her submitting her intermittent FMLA leave paperwork to her doctor.

59. Plaintiff took time off as needed according to the intermittent FMLA guidance from her doctor.

60. Plaintiff utilized her approved intermittent FMLA within days of her suspension pending discharge.

61. Plaintiff could perform the essential functions of the same or equivalent position at the end of her FMLA leave.

62. Defendants interfered with Plaintiff's exercise of rights protected by the FMLA, including by interfering with Plaintiff's approved leave when they suspended her, denied her reinstatement, and forced her to retire.

LAW OFFICE
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

63. Following Plaintiff's exercise of FMLA rights, Defendants subjected Plaintiff to materially adverse employment actions, including suspension, refusal of reinstatement, and forced retirement.

64. Defendants' conduct deprived Plaintiff of benefits and protections to which Plaintiff was entitled under the FMLA.

65. Plaintiff's use of FMLA leave was a negative factor in making employment decisions concerning Plaintiff.

66. A motivating factor for Defendants suspending Plaintiff, denying her reinstatement, and forcing her to retire was due to her taking FMLA protected leave.

67. A motivating factor for Defendants suspending Plaintiff, denying her reinstatement, and forcing her to retire was due to her participation in protected activity under the FMLA.

68. Defendants retaliated against Plaintiff by suspending her, denying her reinstatement, and forcing her to retire, in substantial part because she took FMLA leave.

69. Defendants retaliated against Plaintiff by suspending her, denying her reinstatement, and forcing her to retire, in substantial part because she opposed Defendants' violation of the FMLA.

70. Defendants' alleged reason for their violation of Plaintiff's rights under the FMLA lacks credence and is pretextual.

71. Defendants blocked, denied, and/or hindered Plaintiff's legal rights to take FMLA leave by suspending her, denying her reinstatement, and forcing her to retire.

72. Accordingly, Plaintiff asserts an interference claim and a retaliation claim under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq.

73. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered damages, including lost wages and lost benefits.

LAW OFFICE
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

74. Plaintiff seeks all relief available under 29 U.S.C. § 2617, including lost compensation, interest, liquidated damages where authorized, appropriate equitable relief, reasonable attorney fees, and costs.

**COUNT II:**
**AGE DISCRIMINATION, TERMINATION/CONSTRUCTIVE DISCHARGE, IN VIOLATION OF ELCRA**

75. Plaintiff realleges and incorporates the above paragraphs.

76. Plaintiff asserts an age discrimination discharge claim in violation of ELCRA against both Defendants.

77. At all relevant times, Plaintiff was an "employee" as defined by ELCRA.

78. At all relevant times, Defendant Kroger was an "employer" as defined by ELCRA.

79. At all relevant times, Defendant Nutting was an "employer" under ELCRA by being an "agent" of Defendant Kroger and having supervisory power and authority over Plaintiff, including the authority to terminate her.

80. Plaintiff was qualified for her position. Plaintiff did not have work performance issues.

81. Plaintiff was in a "protected class" as defined by ELCRA based on her age. At the time of her termination, Plaintiff was 72 years old.

82. Defendants engaged in "prohibited conduct" as defined by ELCRA. Defendant Nutting and other management level employees engaged in a concerted effort to harass and discriminate Plaintiff based on her age.

83. Plaintiff was subjected to age-based words and conduct in her workplace.

84. Close in time to her termination, Defendants' age-based words and conduct became more frequent.

LAW OFFICE
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

85. Defendants treated Plaintiff differently and less favorably than similarly situated younger employees.

86. Plaintiff was subjected to an adverse employment decision when she was suspending, denied reinstatement, and forced to retire.

87. Plaintiff's age was a substantial factor in Defendants' decision to effectively terminate Plaintiff's employment.

88. Plaintiff was replaced by a less qualified, substantially younger employee.

89. Plaintiff was terminated/constructively discharged under circumstances giving rise to an inference of unlawful discrimination.

90. Accordingly, Defendants violated the Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2101, et seq.

91. Based on Defendants' wrongful acts, Plaintiff has suffered past and future economic damages as well as past and future emotional harm damages. Plaintiff is also seeking statutory attorney fees and costs.

**COUNT III:**
**RACE DISCRIMINATION, TERMINATION/CONSTRUCTIVE DISCHARGE, IN VIOLATION OF ELCRA**

92. Plaintiff realleges and incorporates the above paragraphs.

93. Plaintiff asserts a race discrimination discharge claim in violation of ELCRA against both Defendants.

94. At all relevant times, Plaintiff was an "employee" as defined by ELCRA.

95. At all relevant times, Defendant Kroger was an "employer" as defined by ELCRA.

LAW OFFICE
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

96. At all relevant times, Defendant Nutting was an "employer" under ELCRA by being an "agent" of Defendant Kroger and having supervisory power and authority over Plaintiff, including the authority to terminate her.

97. Plaintiff was qualified for her position. Plaintiff did not have work performance issues.

98. Plaintiff was in a "protected class" as defined by ELCRA based on her black race.

99. Defendants engaged in "prohibited conduct" as defined by ELCRA. White management level employees, including Defendant Nutting, discriminated against Plaintiff based on her race.

100. Defendants treated Plaintiff differently and less favorably than similarly situated white employees.

101. Plaintiff was subjected to an adverse employment decision when she was suspending pending discharge, denied reinstatement, and forced to retire.

102. Plaintiff's race was a substantial factor in Defendants' decision to effectively terminate Plaintiff's employment.

103. Plaintiff was terminated/constructively discharged under circumstances giving rise to an inference of unlawful discrimination.

104. Accordingly, Defendants violated the Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2101, et seq.

105. Based on Defendants' wrongful acts, Plaintiff has suffered past and future economic damages as well as past and future emotional harm damages. Plaintiff is also seeking statutory attorney fees and costs.

LAW OFFICE
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

**COUNT IV:**
**<u>RETALIATION, TERMINATION/CONSTRUCTIVE DISCHARGE, IN VIOLATION OF ARTICLE VII OF ELCRA</u>**

106. Plaintiff realleges and incorporates the above paragraphs.

107. During the very late stages of her employment, Plaintiff opposed discrimination in her workplace.

108. Plaintiff engaged in protected activity under ELCRA by opposing employment practices in violation of ELCRA.

109. Plaintiff complained to Defendant's management both verbally and in writing.

110. More specifically, Plaintiff complained to Defendant's management by submitting written complaints from July 2025 through October 2025 opposing discrimination and disparate treatment by Defendants based on protected characteristics.

111. Defendants were aware of Plaintiff's engagement in protected activity.

112. Defendants took no prompt remedial action in response to Plaintiff's complaints.

113. In response to Plaintiff's complaints, Defendant Nutting disciplined Plaintiff and treated her worse.

114. After communicating her opposition to employment practices in violation of ELCRA both verbally and in writing, Defendants retaliated against Plaintiff by suspending her, denying her reinstatement, and forcing her to retire.

115. Plaintiff was terminated/constructively discharged under circumstances giving rise to an inference of unlawful retaliation.

116. Accordingly, Defendants violated Article VII of the Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2701, et seq.

117. Based on Defendants' wrongful acts, Plaintiff has sustained back and future economic loss, back and future emotional harm damages. Plaintiff is also seeking statutory attorney fees and costs.

LAW OFFICE
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415

## RELIEF REQUESTED

Plaintiff requests relief under the FMLA as follows:

a. Economic damages, which include back pay, front pay, lost wages, lost employee benefits, expenses incurred, other compensatory damages, and an appropriate award of interest;

b. Liquidated damages;

c. Attorneys' fees, costs, and interest as provided by law; and

d. Such other relief as the Court may deem just and equitable.

In addition, Plaintiff seeks judgment against Defendants for damages exceeding Seventy-Five Thousand Dollars ($75,000.00), as a jury deems just, together with costs, interest, and attorneys' fees pursuant to statute.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in the above-captioned case as guaranteed by Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

LAW OFFICE OF DEAN T. YEOTIS, P.C.

Dated: November 4, 2026

Dean T. Yeotis (P41290)
Sharla R. Charpentier (P84860)
Attorneys for Plaintiff

LAW OFFICE
DEAN T. YEOTIS
611 W. Court Street
Flint, MI 48503
(810) 767-6100
Fax (810) 767-6415